UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

GRACEHAVEN, INC.,

    Plaintiff,

vs.

MONTGOMERY COUNTY DEPARTMENT
OF JOB AND FAMILY SERVICES, *et al.*,

    Defendants.

Case No. 3:24-cv-325

District Judge Michael J. Newman
Magistrate Judge Caroline H. Gentry

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**
**(Doc. No. 13)**

---

The Free Exercise Clause of the First Amendment "protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Carson ex rel. v. Makin*, 596 U.S. 767, 778 (2022). This clause has been the subject of several challenges when a government decides not to provide a public benefit to a religious group, school, or organization—as is this case here. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 456, 462, 466-67 (2017).

This is a civil action, brought by counsel under 42 U.S.C. § 1983, in which Plaintiff Gracehaven Inc. ("Gracehaven"), a Christian ministry, challenges on First Amendment grounds Defendants Montgomery County and its officials'[1] decision not to renew a "substitute care services" contract between Gracehaven and Montgomery County that had been in place for 7 years. Doc. No. 1; Doc. No. 1-5; Doc. No. 13-2 at PageID 343-44. In other words, Gracehaven alleges

---

[1] Defendants are the Montgomery County Department of Job and Family Services, Michelle Niedermier, Brynn McGrath, Judy Dodge, Mary McDonald, and Carolyn Rice ("Montgomery County"). Doc. No. 1; Doc. No. 26 at PageID 429. Mary McDonald replaced Deborah Lieberman as elected Commissioner and is automatically substituted as a party under Fed. R. Civ. P. 25(d). Doc. No. 26 at PageID 429.

Montgomery County's decision not to renew the parties' contract denied it a "public benefit for which it is otherwise qualified" solely because Gracehaven has a policy of hiring based on religion. *See Trinity Lutheran*, 582 U.S. at 466-67.

Now before the Court is Gracehaven's motion for a preliminary injunction, in which Gracehaven seeks an order (1) enjoining Montgomery County from refusing to enter into the substitute care services contract[2] (Doc. No. 1-5) or any other agreement because Gracehaven employs only individuals who share the same religious beliefs, and (2) enjoining Montgomery County from denying or withholding public funds—including Title IV-E funds—from Gracehaven because the ministry employs only coreligionists.[3] Doc. No. 13 at PageID 304. The Court has carefully reviewed both Gracehaven and Montgomery County's motions briefing. *See* Doc. Nos. 13, 23, 26. The Court has also fully considered the parties' oral arguments made during a preliminary injunction hearing on February 28, 2025. Min. Entry (filed on February 28, 2025). For the reasons that follow, the Court **GRANTS** the motion for preliminary injunction.

## I. BACKGROUND

Gracehaven is a nonprofit Christian ministry that provides foster care services for young girls who have survived sex trafficking and abuse. *See* Doc. No. 13-2 at PageID 335. Montgomery County contracts with service providers, such as Gracehaven, to place children in foster care in what are known as "substitute care services" contracts. *See* Doc. No. 1-5; Doc. No. 1-9 at PageID 203-09; Doc. No. 26-3. From 2017 until 2024, Gracehaven and Montgomery County had a substitute care services contract in place that allowed Gracehaven to take foster care placements from Montgomery County. Doc. No. 13-2 at PageID 343-44. The most recent executed substitute

---

[2] The terms of the parties' draft contract are not in dispute.

[3] A "coreligionist" is "a person of the same religion[.]" *Coreligionist*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/coreligionist (last visited Apr. 11, 2025).

2

care services contract between the parties ran from April 1, 2022 to March 31, 2024. *Id.* at PageID 344. However, Montgomery County did not renew its contract with Gracehaven during their 2024-2025 contract negotiations. *Id.* at PageID 347-48.

When the 2024-2025 contract negotiations began for a one-year contract, Gracehaven asked that the parties use its non-discrimination clarification, which explains Gracehaven has a legal right to screen staff based on religious beliefs. Doc. No. 1-4 at PageID 83; Doc. No. 1-7 at PageID 183; Doc. No. 13-2 at PageID 345-36. This was a problem for Montgomery County. A representative for Montgomery County responded that it would use "the standard county non-discrimination provisions and not include the Gracehaven specific" one. Doc. No. 1-4 at PageID 83. Gracehaven's Executive Director, Scott Arnold ("Arnold"), asked that the non-discrimination addendum be used because "Gracehaven is a non-profit religious organization and, as such, we make employment decisions based on our sincerely held religious beliefs." *Id.* at PageID 80. Arnold also described the ministry's hiring policy. *Id.*

Montgomery County responded, "After review of the non-discrimination clarification that we received from Gracehaven and Mr. Arnold's email from Monday, March 25th, it has been decided that Montgomery County Children Services will not move forward with the renewal of the substitute care contract with Gracehaven." *Id.* at PageID 78.

Even after Gracehaven agreed to sign the contract as-is, Montgomery County refused to contract if Gracehaven still had the same coreligionist hiring policy (*i.e.*, hiring individuals with the same religious beliefs). Doc. No. 1-8 at PageID 192 ("Does Gracehaven have the same non-discrimination policy as we received earlier this year? I have attached the document that was previously sent to us. If this is still an active policy then, unfortunately, we will not be able to move forward with a contract for substitute care services"). Gracehaven alleges that, by so acting,

3

Montgomery County violated the First Amendment Free Exercise Clause of the United States Constitution with its reasoning for not renewing Gracehaven's contract. Doc. No. 13-1.

## II. PRELIMINARY INJUNCTION ANALYSIS

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)). Courts should order preliminary injunctions "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The burden of "proof required for [a] plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary*, 288 F.3d at 739.

To determine whether to issue a preliminary injunction, the Court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Sixth Circuit precedent dictates that "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Kentucky v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (citation omitted).

**1. Likelihood of success on the merits**

Gracehaven will likely succeed on the merits of its claim that Montgomery County's actions violated the Free Exercise Clause because it excluded Gracehaven from an otherwise available

public benefit based on Gracehaven's choice to employ those who share the same faith.[4]

The Free Exercise Clause of the First Amendment, which applies to the States through the Fourteenth Amendment, "protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Carson*, 596 U.S. at 778 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)); *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "[A] State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson*, 596 U.S. at 778. "When otherwise eligible recipients are disqualified from a public benefit 'solely because of their religious character,'" the Court must apply strict scrutiny to the reason the benefit was denied. *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 484 (2020) (citing *Trinity Lutheran*, 582 U.S. at 462). In the Sixth Circuit, "[a]ll plaintiffs must show is that they are 'otherwise eligible'" to receive the benefit "apart from the regulation that burdens their religious exercise." *Dahl v. Bd. of Trs. of W. Michigan Univ.*, 15 F.4th 728, 732 (6th Cir. 2021).

Here, Montgomery County offers a public benefit: County-administered Title IV-E funding, which helps fund substitute care service providers in the foster care system. *See* 42 U.S.C. § 670, *et seq.*; Ohio Admin. Code § 5101:2-47-01(C); Doc. No. 1-9 at PageID 203-209 (approving substitute care services with providers). These benefits are similar to the public benefits in *Trinity Lutheran*, *Espinoza*, and *Carson*. *See Trinity Lutheran*, 582 U.S. at 462-63, 466-67 (playground resurfacing grant); *Espinoza*, 591 U.S. at 476-78 (school scholarship program); and *Carson*, 596 U.S. at 780-81, 789 (tuition assistance payments). In prior years, Gracehaven had received foster care placements and Title VI-E funding from Montgomery County, and the State of Ohio had approved Gracehaven to receive Title IV-E funds. *See* Doc. No. 13-2 at PageID 338, 343. Gracehaven currently receives

---

[4] Gracehaven offered additional reasons why it is likely to succeed on the merits which the Court need not address. *See* Doc. No. 13-1 at PageID 322-330.

similar funding from other Ohio counties for foster care placements. *Id.* at PageID 343. In other words, Gracehaven has demonstrated it is "otherwise eligible" to receive the public benefit—the Title IV-E funds from Montgomery County. *See Dahl*, 15 F.4th at 732.

Next, the evidence presently before the Court shows that Montgomery County excluded Gracehaven solely based on its religious character and exercise. The events that occurred during the 2024-2025 contract negotiations reveal that Montgomery County refused to renew its contract with Gracehaven because of Gracehaven's religious hiring policy. *See* Doc. No. 1-4 at PageID 78, 80, 83; Doc. No. 1-7 at PageID 183; Doc. No. 1-8 at PageID 192; Doc. No. 13-2 at PageID 345-36.

Religious organizations, like Gracehaven, hire coreligionists; it is part of what gives religious organizations their religious character. *See Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 335-36 (1987); *see also id.* at 342-43 (Brennan, J., concurring) ("a religious organization should be able to require that only members of its community perform those activities" that "constitute part of a religious community's practice"); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007) (one factor for whether an organization qualifies as "religious" is "whether its membership is made up by coreligionists"). While it may suggest other grounds now, the evidence before the Court demonstrates that Montgomery County's justification for not renewing the contract at the time of negotiating was Gracehaven's policy for hiring those with the same religious beliefs. Doc. No. 1-4 at PageID 78; Doc. No. 1-8 at PageID 192. In other words, Montgomery County excluded an "otherwise eligible" entity, Gracehaven, from a public benefit "on the basis of its religious exercise[,]" which triggers strict scrutiny. *Carson*, 596 U.S. at 789.

Montgomery County's justifications cannot survive strict scrutiny. Strict scrutiny is the "most rigorous scrutiny[.]" *Trinity Lutheran*, 582 U.S. at 466 (internal quotations omitted). A

6

government policy can survive strict scrutiny only if it advances "interests of the highest order" and is narrowly tailored to achieve those interests. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993) (internal quotation marks omitted); *Carson*, 596 U.S. at 780. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021).

Under strict scrutiny, Montgomery County's asserted interest "must be genuine, not hypothesized or invented *post hoc* in response to litigation[.]" *Fox v. Washington*, 949 F.3d 270, 283 (6th Cir. 2020) (citations omitted); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (quoting United *States v. Virginia*, 518 U.S. 515, 533 (1996)). Thus, Montgomery County is "limited to raising the justifications it cited at the time it made the decision." *Id.*

Montgomery County's justification for not renewing the contract at the time was Gracehaven's policy for hiring only coreligionists. Such government action that "targets religious conduct for distinctive treatment . . . will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. This is not one of those cases. Montgomery County lacks an "interest[] of the highest order" that is narrowly tailored to achieve those interests—thus failing strict scrutiny. *See id.*

Montgomery County now attempts to provide a *post-hoc* justification why Gracehaven was not renewed: the County had not placed children at Gracehaven for years, and the Associate Director of Montgomery County Job and Family Services notified Montgomery County staff that it would not be moving forward with Gracehaven for that reason. Doc. No. 23 at PageID 381; Doc. No. 23-1 at PageID 399. However, that is not the justification Montgomery County provided at the time of the denial as the email communications between the parties show. *Compare* Doc. No. 23 at PageID 381; Doc. No. 23-1 at PageID 399 *with* Doc. No. 1-4 at PageID 78-80; Doc. No. 1-8 at PageID 192. In the emails, Montgomery County explained it refused to contract with Gracehaven

because Gracehaven had an active policy of hiring only coreligionists. Doc. No. 1-4 at PageID 78-80; Doc. No. 1-8 at PageID 192. Montgomery County is "limited to raising justifications cited at the time it made the decision." *Fox*, 949 F.3d at 283. As described above, that is not enough to survive strict scrutiny. *See Lukumi*, 508 U.S. at 546. Accordingly, Montgomery County lacks a compelling interest that is narrowly tailored to achieve those interests and fails to survive strict scrutiny.

For the above reason, Gracehaven has shown there is a strong likelihood it will succeed on the merits of its First Amendment claim. *See Carson*, 596 U.S. at 778; *see also Dahl*, 15 F.4th at 732.

### 2. Irreparable harm

To meet the irreparable harm standard for a preliminary injunction, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (citing *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). However, "irreparable harm is presumed in cases of constitutional violations." *Castillo v. Whitmer,* 823 Fed. App'x 413, 417 (6th Cir. 2020); *see also Brown v. Greene Cnty. Vocational Sch. Dist. Bd. of Educ.*, 717 F. Supp. 3d 689, 696 (S.D. Ohio 2024) (Newman, J.). In First Amendment cases, "the crucial inquiry [for a preliminary injunction] is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Bays*, 668 F.3d at 819 (internal quotation omitted). The Supreme Court has found "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

As described above, Gracehaven will likely succeed on the merits of its First Amendment claim, satisfying the irreparable harm standard. *See id.* In addition to the loss of Gracehaven's

constitutional freedoms, it has also been unable to carry out its mission: caring for survivors of sex trafficking and abuse. Doc. No. 13-2 at PageID 335-36. Even though Montgomery County did not renew Gracehaven's contract, Montgomery County neglected to remove Gracehaven from a listserv that requests foster care placements for children. Doc. No. 26-3. At least 25 referrals came through to Gracehaven after Montgomery County's decision not to renew, and Gracehaven stated it could have placed some of the children at its facility had a contract with Title IV-E funding been in place. Doc. No. 13-2 at PageID 349; Doc. No. 26-2 at PageID 490. Thus, Gracehaven has shown that it will face irreparable harm if a preliminary injunction is not granted. *Cf. Bays*, 668 F.3d at 818-19.

    3. **Harm to others**

The Court finds that any harm to others that may occur due to the issuance of a preliminary injunction does not outweigh the harm Gracehaven will face without it. In fact, third parties and the public would benefit from having more options for the substitute care services that Gracehaven provides. Therefore, the injunction would not cause substantial harms to others. *Cf. Bays*, 668 F.3d at 819.

    4. **Public interest**

It is in the public interest to grant the preliminary injunction Gracehaven seeks. First, "'it is always in the public interest to prevent violation of a party's constitutional rights[]'"—as happened here. *Bays*, 668 F.3d at 825 (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville,* 274 F.3d 377, 400 (6th Cir. 2001)). Montgomery Country argues that an injunction is not in the public interest because "entering into an agreement with" Gracehaven would "require[] [Montgomery County] to encumber more than $500,000 over a two-year (2) period[.]" Doc. No. 23 at PageID 389. While it may be inconvenient for Montgomery County to adjust its budget, Montgomery County can (and has) entered into substitute care contracts at various times. *See* Doc. No. 26-1 at

9

PageID 454, 470. As it did, for example, with other substitute care providers in June and October 2024. *See id.* Therefore, Gracehaven has shown the balance of equities and public interest weigh in its favor. *Cf. Bays*, 668 F.3d at 819.

### 5. Balancing the Preliminary Injunction Factors

In sum, Gracehaven has met its burden to demonstrate that, based on the evidence presently before the Court, the balance of the preliminary injunction factors warrants the issuance of its requested preliminary injunction. *See Overstreet*, 305 F.3d at 573 (Courts should enter a preliminary injunction "only if the movant carries his or her burden of proving that the circumstances clearly demand it").

### III. SCOPE OF RELIEF

Gracehaven's motion for a preliminary injunction is thus **GRANTED**. It is further **ORDERED** that:

A. Defendants Montgomery County Department of Job and Family Services, Michelle Niedermier, Brynn McGrath, Judy Dodge, Mary McDonald, and Carolyn Rice, and all those acting by, through or in concert with them (including, but not limited to the Montgomery County Department of Job and Family Services, Michelle Niedermier, Brynn McGrath, Judy Dodge, Mary McDonald, Carolyn Rice, and any other persons bound by Fed. R. Civ. P. 65(d)(2)(C)), are **ENJOINED** from refusing to enter into the New Contract (Doc. No. 1-5) or any other agreement (current or future) with Gracehaven because the ministry employs only individuals who share and live out its religious beliefs and practices; and

B. Defendants Montgomery County Department of Job and Family Services, Michelle Niedermier, Brynn McGrath, Judy Dodge, Mary McDonald, and Carolyn Rice, and all those acting by, through or in concert with them (including, but not limited to the Montgomery County Department of Job and Family Services, Michelle Niedermier, Brynn McGrath, Judy Dodge, Mary McDonald, Carolyn Rice, and any other persons bound by Fed. R. Civ. P. 65(d)(2)(C)), are **ENJOINED** from denying or withholding public funds—including Title IV-E funds—from Gracehaven because Gracehaven employs only coreligionists.

Furthermore, the Court **WAIVES** the bond requirement under Fed. R. Civ. P. 65(c), as Gracehaven seeks only to compel Montgomery County to abide by the letter of the law. This

preliminary injunction will remain in place during the pendency of this action.  Montgomery County and all Defendants are **ADVISED** they must immediately comply with this Order.  Their failure to do so may result in sanctions including, but not limited to, the issuance of a contempt finding.

    **IT IS SO ORDERED.**

<u>April 21, 2025</u>　　　　　　　　　　　　　　<u>s/*Michael J. Newman*　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　Hon. Michael J. Newman
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge